## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSHUA L. REINHARD,
    Plaintiff

    v.

THE HONORABLE JEH JOHNSON, *et al.*,
    Defendant

Civil Action No. 16-1807 (CKK)

## REDACTED MEMORANDUM OPINION
(September 16, 2016)

In this case, Plaintiff Marine Science Technician Chief ("MSTC") Joshua L. Reinhard challenges the United States Coast Guard's decision to involuntarily separate him for alleged misconduct. Before the Court is Plaintiff's [4] Motion for Preliminary Injunction. Plaintiff asks the Court to enter an order causing the Coast Guard to stay Plaintiff's involuntary separation pending an investigation into the propriety of the investigation that resulted in his separation and the convening of a new Administrative Separation Board ("Board").

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court DENIES Plaintiff's [4] Motion for Preliminary Injunction. First, the Court concludes that Plaintiff has not shown a likelihood of success on the merits. Although couched in terms of procedural error, the gravamen of Plaintiff's claim is that a particular piece of evidence used against him during the Board's review should not be credited. Plaintiff had full opportunity to challenge that evidence during the Coast Guard's administrative

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot."), ECF No. 4;
- Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Opp'n"), ECF No. 11;
- Pl.'s Reply in Support of Mot. for Prelim. Inj. ("Pl.'s Reply"), ECF No. 12;
- Defs.' Sur-Reply, ECF No. 17-1.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

review of his case. Plaintiff has not demonstrated any fault with the procedures of that review, and cannot succeed on his claim under the Administrative Procedures Act ("APA") by now attacking the Coast Guard's decision with affidavits created after the fact. Moreover, even assuming Plaintiff could succeed on his legal claims in this Court by showing that certain testimony against him was not credible because it was fabricated, he has not shown a likelihood of proving that fabrication. Being generous, the record evidence on this point is in equipoise. With respect to the other equitable factors the Court must consider in evaluating a motion for a preliminary injunction, the Court concludes that Plaintiff has not demonstrated that he will suffer irreparable harm absent injunctive relief. Plaintiff can be reinstated with back-pay if successful on the merits, ███████████████████████████████████████████████████ ████████████████████████████████ Finally, Plaintiff has also not shown that the equities tip in his favor, or that the issuance of the requested injunction would be in the public interest. Accordingly, the Court determines that Plaintiff has not met his burden of showing that a preliminary injunction is warranted.[2]

## I.    BACKGROUND

The pleadings currently before the Court are not a model of clarity, and often present a contradictory factual picture. The Court provides only a brief review of the background as is necessary to resolve the pending Motion for Preliminary Injunction.

---

[2] The Court GRANTS IN PART and DENIES IN PART Defendants' [17] Motion to Strike New Materials and for Leave to File a Sur-Reply. Defendants' Motion is granted in that the Court will consider Defendants' Sur-Reply because it is narrowly tailored to address new information and evidence provided with Plaintiff's Reply. The Court will not, however, strike the affidavits attached to Plaintiff's Reply. The Court does note that it has not relied on the affidavit of Ms. Brittney Malin or the transcript she created of the September 12, 2016 conversation between Ms. Lyndee Moore and Mr. Ronnie Wiggins because the audio recording Plaintiff provided is the best evidence of that conversation. The Court also GRANTS Plaintiff's [18] Motion for Leave to File a Supplemental Affidavit.

## A. The Coast Guard Separation Proceedings

Plaintiff has served on active duty with the Coast Guard for over 18 years. CG000012. On February 16, 2015, Plaintiff was allegedly at a bar with a Mr. Ronnie Wiggins watching another member of the Coast Guard, Marine Science Technician Second Class ("MSTSC") Christopher McKibben's, band play. CG000090; Compl. ¶¶ 15-17. Mr. McKibben is married to yet another Coast Guard member, MSTSC Brittany McKibben.[3]  *Id.*  That night, Plaintiff allegedly made a statement to Mr. Wiggins along the following lines: "I'm going to ensure the McKibbens don't get stationed together; I'm going to make her my wife." CG000034; CG000090; Compl. ¶¶ 15-17.

This statement appears to have been reported to the Coast Guard and to have played a role in the Coast Guard's decision to initiate a Standard Investigation into Plaintiff's alleged misconduct. CG000089. The investigation that followed was conducted by Preliminary Inquiry Officer ("PIO") Lieutenant ("Lt.") D.J. Newcomb.  *Id.*

Lt. Newcomb issued a report on his investigation on May 5, 2015.  *Id.*  The report is largely based on several interviews Lt. Newcomb conducted.  *Id.*; *see also* CG000101-122. Lt. Newcomb attached notes from his interviews to his report.  *Id.*  At the outset of the report, Lt. Newcomb explained:

> Exhibits 1-13 and 16 document interview notes taken by me in the presence of the interviewee. At the conclusion of the discussion, the interviewee reviewed the notes to ensure their accuracy and completeness. After agreement from each interviewee that the notes accurately reflected the conversation, I saved the file and did not make any further changes to the text. There are signatures on most of these exhibits; however, MSTC Reinhard has been advised by his legal counsel to not sign the notes from his interview. Additionally,

---

[3] The record contains two different spellings of MSTSC McKibben's name. For the purposes of this opinion, the Court has adopted the spelling used in the Action of the Final Reviewing Authority of the Coast Guard. CG000002.

> I have contacted interviewees and I am still waiting on the signatures
> from a few of them (Exhibits 7, 10, 12, and 15), which I will provide
> upon receipt.

CG000089. Exhibit 7 to Lt. Newcomb's report is a page of notes entitled "Ronnie Wiggins

(non-CG Civilian), 16 March 2015, 1050-1057." CG000110. The page states, in part,

"[c]onfirmed that on the night before Mardi Gras 2015 at the Drink House that MSTC had said

to him, 'I'm gonna make sure that those two leave here this summer going to different units . . .

I'm going to make her my wife.'" *Id.* Based on this interview, Lt. Newcomb made the

following findings of fact:

> **Finding of Fact 3:** On or about the evening of 16 February 2015,
> MSTC Joshua Reinhard was at a local drinking establishment . . . .
>
> **Finding of Fact 4:** Mr. Ronnie Wiggins was speaking with MSTC
> Reinhard at some point during the evening. During this
> conversation, MSTC Reinhard purportedly made a statement
> referencing two married military members of MSU Morgan City,
> MST2 Christopher McKibben and MST2 Brittany McKibben, who
> were also at the drinking establishment. MSTC Reinhard stated the
> following, or words to this effect, "I am going to make sure that they
> are not going to be stationed together following this summer's
> transfer. I'm going to make Brittany my wife." (Exhibit 7).

CG000090.

During the course of this investigation, Plaintiff denied making the statement about the

McKibbens to Lt. Newcomb. CG000091. Because Lt. Newcomb found Mr. Wiggins "more

believable" than Plaintiff, he determined that Plaintiff's denial was false and that, by making this

false official statement, Plaintiff had violated Article 107, UCMJ ("Any person subject to this

chapter who, with intent to deceive . . . makes any [ ] false official statement knowing it to be

false, shall be punished as a court-martial may direct."). CG000097. Lt. Newcomb also made

numerous other findings of fact regarding various inappropriate interactions between Plaintiff

and female officers, as well as several "alcohol incidents." CG000090-99.

4

On August 6, 2015, Plaintiff was notified by Captain D.G. McClellan that an action to involuntarily separate him from the Coast Guard was being initiated. CG000041-50. The grounds upon which the action were initiated were alcohol abuse and the commission of a serious offense. CG000041.

An Administrative Separation Board was convened to consider Plaintiff's alleged misconduct on December 10 and 11, 2015. CG000021. The Board took evidence and heard witnesses at a formal administrative hearing. CG000021-32 (hearing record listing exhibits and witnesses). Plaintiff testified before the Board. CG000002; CG000028. The Board also considered Lt. Newcomb's investigation report. CG000026. Neither Lt. Newcomb nor Mr. Wiggins, however, testified in front of the Board. CG000021-32.

The Board subsequently issued a Report on December 17, 2015, listing its findings of fact, opinions and recommendations. CG000011-20. The Board found that "[e]nlisted members involved in [three] alcohol incidents shall be processed for separation from the Coast Guard." CG000012. The Board found that Plaintiff had been involved in three alcohol incidents. CG000012-13. The Board also found that a preponderance of the evidence proved that Plaintiff violated Article 89, UCMJ ("Any person subject to this chapter who behaves with disrespect toward his superior commissioned officer shall be punished as a court-martial may direct."), when he "made unwelcome sexually suggestive remarks to LT jg Lloyd," his superior officer. CG000033-35.

Finally, the Board made the following findings of fact with regard to the alleged violation of Article 107, UCMJ:

> **Finding of Fact 27:** The Article 107, UCMJ, single specification violation found to have been committed in the PIO report involved Respondent making a false official statement to the preliminary investigating officer. Respondent's statement to the PIO

> contradicted witness statements obtained in the course of the preliminary investigation report.
>
> **Finding of Fact 28:** Mr. Ronnie Wiggins indicated that Respondent had made a statement to him concerning MST2 Brittany McKibben and MST2 Christopher McKibben asserting, "I'm going to make sure that those two leave here this summer going to different units . . . I'm going to make her my wife."
>
> **Finding of Fact 29:** Respondent denied, to the PIO, LT D. Newcomb, that he made the statement about the McKibben[s].
>
> **Finding of Fact 31:** Several members noted that Respondent had made other uncomfortable and suggestive comments about MST2 Brittany McKibben.

CG000034.

Based on these findings, the Board found that the bases for discharge for "alcohol abuse" and "commission of serious offense" had been met. CG000014-15. With respect to the "commission of serious offense," the Board considered both the incident regarding the McKibbens and the incident with LTJG Lloyd. All Members of the Board agreed that Plaintiff should be separated from the Coast Guard. CG000016. All Members agreed that Plaintiff should be separated if the basis for separation was his alcohol abuse. *Id.* All Members also agreed that Plaintiff should be separated if the basis for separation was the commission of a serious offense. *Id.* The Members only disagreed about "how many offenses support this [latter] basis." *Id.* A majority of the Board (two of three members) found that the "commission of a serious offense" basis was supported by Plaintiff's violation of Article 107 by falsely denying having made the allegedly inappropriate statement regarding the McKibbens. *Id.* The third Member did not believe that this finding was supported by sufficient evidence. *Id.; see also* CG000037-40 (Minority Report finding that alcohol abuse and commission of a serious offense

involving incident with female superior officer LTJG Lloyd both supported separation, but finding that violation of Article 107 should not be used to support separation).

On December 31, 2015, Plaintiff submitted a rebuttal to the Board's Report, arguing that there was insufficient evidence to find a violation of Article 107, UCMJ by a preponderance of the evidence. CG000008-10. Plaintiff argued that the finding was based solely on the "unsworn and unsigned, interview summary" prepared by Lt. Newcomb's regarding his interview of Mr. Wiggins "via telephone." CG000008. Plaintiff listed ten separate reasons why "the Wiggins evidence" was not credible, including that it was "based on a short phone conversation," that Wiggins "was never interviewed face-to-face," that Wiggins was "not placed under oath," and that Wiggins' "memory of the night in question is weak." CG000009-10. Plaintiff did not argue that Lt. Newcomb's alleged interview with Mr. Wiggins never actually occurred. CG000008-10.

The Board's report and Plaintiff's rebuttal was forwarded to the Coast Guard Personnel Service Center Command ("PSC") for a final determination. On August 17, 2016, Captain K.L. Virkaitis, on behalf of the PSC, took action on the Board's recommendations and decided to involuntarily separate Plaintiff. CG000001-02. Captain Virkaitis wrote that he was "taking action on the Recommendations that received the concurrence of a majority of the Board Members." CG000001. In describing the Board's recommendations, Captain Virkaitis quoted the Board's report as stating:

> "A majority of the members agree that a preponderance of the evidence also proves a violation of Article 107, UCMJ, and that this violation in conjunction with the violation of Article 89, UCMJ, as well as other information in the record support a recommendation for separation."

*Id.* Captain Virkaitis also wrote that he had considered Plaintiff's argument that there was insufficient evidence to support the Board's findings regarding his violation of Article 107, but rejected it. He wrote:

> I have reviewed the rebuttal comments from MSTC Reinhard's counsel, which assert that the evidence regarding the violation of Article 107, UCMJ, was not supported by a preponderance of the evidence. However, the Board Report contains sufficient evidence to support a finding, by a majority of the Board Members, that MSTC Reinhard made a false statement in violation of Article 107, UCMJ. *The Board heard testimony from MSTC Reinhard and was able to assess his credibility to determine if he should be believed over other witnesses and evidence.* The Board also pointed to multiple exhibits which they considered to determine whether or not MSTC Reinhard violated Article 107, UCMJ. In addition to the unsworn statement summary from Mr. Wiggins, the Board Members also noted written statements from Coast Guard members with information that led them to conclude that the statement from Mr. Wiggins was accurate. This is noted in Finding of Fact #31, which points to Exhibits 17, 18, 21, 27, and 28. In finding of Fact #31, the Board stated: "Several members noted that [MSTC Reinhard] had made other uncomfortable and suggestive comments about MST2 Brittany McKibben." Finding of Fact #31 was highlighted in the Recommendations of the majority of the Board Members that a preponderance of the evidence supports separation, with a General Discharge, without probation or the opportunity to retire.

CG000002 (emphasis added). Plaintiff's attorney requested the Coast Guard stay Plaintiff's discharge on September 2, 2016. CG000402. Plaintiff stated that "[t]he reason for this request is that the sole piece of evidence used to separate MSTC Reinhard is a falsely misleading exhibit." *Id.* The Coast Guard denied the request by letter dated September 9, 2016. CG000400. Plaintiff's separation is scheduled for today, September 16, 2016. *Id.*

**B. Plaintiff's Allegations in this Case**

Plaintiff filed the pending Motion for Preliminary Injunction at the end of the day on Friday, September 9, 2016, and the Court held a telephonic hearing with the parties on September 12, 2016. Although the filings from both parties contain various other tangential

8

allegations, Plaintiff clarified and honed his claims on the record. Based in part on those representations, the Court understands that the gravamen of Plaintiff's various causes of action is the following:

Plaintiff alleges that, contrary to Lt. Newcomb's report, Lt. Newcomb never actually interviewed Mr. Wiggins. Compl. ¶ 30. Plaintiff alleges that, "[o]n August 26 and 29, 2016, Ms. Carol Thompson, Senior Associate with The Federal Practice Group, spoke with Mr. Wiggins via telephone. During these phone calls, Mr. Wiggins confirmed that he never spoke with LT Newcomb or any other investigating officer in the course of any investigation. He further confirmed that he was never asked to review any interview notes to verify their validity nor was he asked to sign any interview notes." *Id.* Accordingly, Plaintiff alleges that "LT Newcomb's report contains at least four false official statements . . . that he: (1) took notes in front of Mr. Wiggins; (2) that he had Mr. Wiggins review the notes; (3) that he had Mr. Wiggins verify the notes; and (4) that he reached back out to Mr. Wiggins to have him sign the verified notes." *Id.* ¶ 35. Plaintiff argues that because the Board relied on this false report to support its recommendation to separate him, his separation is unlawful and must be overturned. *Id.* ¶ 33. Plaintiff asserts causes of action pursuant to the APA, the Due Process Clause of the Fifth Amendment to the United States Constitution, and other "USCG Regulations and Federal law." Compl. ¶¶ 33-58.

## II.   LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear*

*showing,* carries the burden of persuasion." (emphasis in original; quotation marks omitted)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama,* 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley,* 644 F.3d at 392 (quoting *Winter,* 555 U.S. at 20) (alteration in original; quotation marks omitted)). "'When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" *Abdullah v. Obama,* 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.,* 571 F.3d 1288, 1292 (D.C. Cir. 2009)). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis,* 571 F.3d at 1291 (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

The Court notes that it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter. See Save Jobs USA v. U.S. Dep't of Homeland Sec.,* 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the United States Court of Appeals for the D.C. Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, freestanding requirement for a preliminary injunction.'" *Sherley,* 644 F.3d at 393 (quoting *Davis,* 571 F.3d at 1296 (concurring opinion)). However, the Court of Appeals has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.; see also Save Jobs USA,* 105 F. Supp. 3d at 112. In any event, this Court need not resolve the viability of the sliding-scale

approach today as the Court determines that "a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis." *Sherley*, 644 F.3d at 393.

## III.   DISCUSSION

### A. Plaintiff Fails to Establish a Likelihood of Success on the Merits

Plaintiff has not established a likelihood of success on the merits of his claims. First, Defendants appear to have a strong argument that, regardless of the perceived error about which Plaintiff now complains, Plaintiff would still have been separated from the Coast Guard. As discussed above, the gravamen of Plaintiff's Complaint is that the Administrative Separation Board that recommended Plaintiff's separation relied on Lt. Newcomb's allegedly falsified report of his interview with Mr. Wiggins in determining that Plaintiff violated Article 107, UCMJ. Compl. ¶ 33; Pl.'s Mot. at 14.

This claim may falter at the threshold, however, because it is not at all clear that the finding of a violation of Article 107 was necessary to the Coast Guard's decision to separate Plaintiff. Although Plaintiff argues that "without a finding of a violation of Article 107, the Separation Authority has stated that MSTC Reinhard should not be separated," Pl.'s Mot. at 14, this is not a particularly accurate characterization of the record.[4] A majority of the members of

---

[4] Plaintiff appears to rely entirely on a statement of the Board, which was subsequently quoted by Captain Virkaitis in his approval of the Board's recommendation, that "[a] majority of the members agree that a preponderance of the evidence also proves a violation of Article 107, UCMJ, and that this violation *in conjunction with* the violation of Article 89, UCMJ, as well as other information in the record support a recommendation for separation." Pl.'s Mot. at 6 (emphasis added by Plaintiff). But in the immediately preceding sentence, Captain Virkaitis noted that "all Board Members agreed that MSTC Reinhard should be separated if the basis for separation is Misconduct, Commission of a Serious Offense." CG000001. The Board found that separation was warranted for Commission of a Serious Offense based on Plaintiff's violation of Article 89 (incident with LTJG Lloyd), independent of his violation of Article 107. CG000016 ("All members agree that a preponderance of the evidence proves a violation of Article 89, UCMJ, and that this violation in conjunction with other information in the record support a recommendation for separation."). At this point at least, the Court is reluctant to conclude that

Plaintiff's Board concluded that there were *three* separate bases for separating Plaintiff: alcohol abuse, commission of a serious offense by violating Article 89 (incident with female superior officer LTJB Lloyd), and commission of a serious offense by violating Article 107. CG000014-15. Plaintiff's claims in this lawsuit address only the violation of Article 107. Moreover, Defendants have provided a sworn affidavit from Captain Virkaitis, who had the ultimate authority to decide whether to separate Plaintiff, attesting that even if the "Board had been unanimous in the opinion that MSTC Reinhard did not violate Article 107 of the UCMJ, I would have taken action contrary to the recommendation of the Board and ordered that MSTC Reinhard be separated from the Coast Guard." Defs.' Opp'n, Ex. 3 (Decl. of Captain Kurtis L. Virkaitis, United States Coast Guard) at ¶ 8. Although, going forward, the parties will likely continue to dispute the degree to which Plaintiff's separation was dependent on the finding that he violated Article 107, at this stage it is sufficient to say that the other bases for separation and Captain Virkaitis' affidavit appear to present a significant roadblock for Plaintiff's claims.

Even assuming that Plaintiff's separation would not have occurred but for the Article 107 finding, Plaintiff claims will still likely fail. Plaintiff appears to bring his claims primarily under the APA. Compl. ¶¶ 5-6. Under the APA, the Court's "task is to determine whether the agency's decision was made 'without observance of procedure required by law,' or whether it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Union Neighbors United, Inc. v. Jewell*, No. 15-5147, 2016 WL 4151237, at *6 (D.C. Cir. Aug. 5, 2016) (quoting 5 U.S.C. § 706(2)(A) & (D)). Accordingly, Plaintiff attempts to couch his

---

the Captain's incorporation of the Board's use of the word "conjunction" was meant to indicate that his determination to separate Plaintiff was dependent on the finding that Plaintiff violated Article 107.

Complaint and Motion for Preliminary Injunction in terms of alleged procedural error and denial of due process.

However, the record before the Court strongly suggests that no such denial of due process has occurred.  As Defendants point out and Plaintiff does not contest, "[s]everal procedures occurred between LT Newcomb's investigation and the Coast Guard's final decision to separate Plaintiff." Defs.' Opp'n at 3.  After the investigation, a Board was convened to hear evidence regarding the allegations against Plaintiff. CG000021.  Plaintiff had the opportunity at that time to present evidence and call witnesses. CG000021-32.  The Board heard testimony from Plaintiff and was able to consider his credibility. CG000028.  The Board then prepared a report making factual findings and recommending a disposition for Plaintiff. CG000011-20.  Plaintiff had the opportunity to review and contest that report. CG000008-10.   Only after considering the Board's report, Plaintiff's rebuttal to that report, and the entire record of evidence, did Captain Virkaitis, on behalf of a "Final Reviewing Authority," decide to separate Plaintiff. CG000001-02.  Even now, Plaintiff may still petition the Board for Correction of Military Records to request relief. CG000400.

Further, Plaintiff had a full opportunity to, and did, exercise his procedural rights to challenge *the very evidence at issue in this case*.[5]  Plaintiff argued to the Coast Guard that Lt.

---

[5] For this reason, the cases cited by Plaintiff are significantly distinguishable.  In both *Wade v. United States*, 126 Fed. Cl. 638 (2016) and *Rogers v. United States*, 124 Fed. Cl. 757 (2016), plaintiffs' discharges were overturned because the record demonstrated that they had been "denied important procedural protections" or a "material error" had occurred in their administrative proceedings. *Rogers*, 124 Fed. Cl. at 768; *Wade*, 126 Fed. Cl. at 645.  For example, in *Wade*, plaintiff was discharged from the Navy for wrongful use of cocaine even though the Navy failed to produce any evidence of a necessary element of wrongful drug use. *Wade*, 126 Fed. Cl. at 645.  In *Rogers*, plaintiff was "denied important procedural protections granted him under the Coast Guard's regulations" when he was separated from the Coast Guard for alcohol abuse based on a Captain's recommendation that referred to various alleged incidents and statements that were not made part of the record before plaintiff's Board. *Rogers*, 124 Fed.

Newcomb's notes were not sufficient evidence upon which to base a finding that he violated Article 107. CG000010. This argument was rejected. CG000002. Plaintiff did not argue to the Board, or in response to the Board's Report, that the evidence of Lt. Newcomb's interview with Mr. Wiggins was false, as he does here. Pl.'s Mot. at 5 n.5. However, Plaintiff does not suggest he was denied the opportunity to do so. *Id.* (noting that Plaintiff's counsel "did not address the issue with the PIO's report that is being addressed in this correspondence; arguably, this was due to ineffective assistance of counsel as the prior civilian counsel did not interview Mr. Wiggins prior to the Board hearing"). Moreover, Defendants argue and Plaintiff does not contest that Plaintiff had the opportunity to call Mr. Wiggins as a witness at the Board but did not do so. Defs.' Opp'n at 9; CG000480-81 (Enlisted Personnel Administrative Boards Manual).

In sum, Plaintiff does not give the Court any reason to doubt that, based on the record before it, the Coast Guard made a reasoned decision to separate Plaintiff. Instead, Plaintiff attacks the credibility of testimonial evidence in that record based on events that occurred *after* the Coast Guard made its decision to separate Plaintiff. But not only does "an agency's credibility decision normally enjoy[ ] almost overwhelming deference," *Sasol N. Am. Inc. v. NLRB*, 275 F.3d 1106, 1112 (D.C. Cir. 2002), in an APA case, courts must "base their review of an agency's actions on the materials that were before the agency at the time its decision was made," *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). Plaintiff acknowledges that he did not argue to the Board that Lt. Newcomb's interview notes were falsified. That evidence was not in the record. In fact, the evidence with which Plaintiff seeks to discredit Lt. Newcomb's

---

Cl. at 768. No such error has been demonstrated in this matter at this time. Plaintiff does not claim that the Coast Guard separated him without any evidence of a required element of his violations, or after considering evidence which he did not have the opportunity to rebut. Plaintiff simply asks this Court to review, *post hoc*, the credibility determination the Coast Guard made with respect to a piece of evidence used against him during his separation proceedings.

investigation notes only came into existence *after* the Board and Captain Virkaitis made their decisions in this matter.  Because Plaintiff cannot rely on such evidence from outside of the record under the APA, his claims are likely to fail.

Finally, even to the extent that Plaintiff could succeed in this Court by now discrediting Lt. Newcomb's description of his interview with Mr. Wiggins, the Court finds that Plaintiff still has not met his burden.  Plaintiff alleges that Lt. Newcomb lied when he stated "that he: (1) took notes in front of Mr. Wiggins; (2) that he had Mr. Wiggins review the notes; (3) that he had Mr. Wiggins verify the notes; and (4) that he reached back out to Mr. Wiggins to have him sign the verified notes."  Compl. ¶ 35.  The record before the Court does not demonstrate that Plaintiff is likely to prove that Lt. Newcomb made these false statements.  Pl.'s Reply at 2.  Being generous, the evidence is currently in equipoise.

In support of his allegations, Plaintiff submitted the affidavit of Ms. Carol Thompson, a Senior Associate at The Federal Practice Group, which represents Plaintiff in this matter.  Ms. Thompson states that she spoke with Mr. Wiggins on two separate phone calls.  Compl., Ex. 10 (Affidavit of Ms. Thompson).  During the first phone call, on August 26, 2016, Ms. Thompson states that Mr. Wiggins said that "[h]e has never spoken to an investigator or anyone from the Coast Guard (CG) regarding an investigation into potential wrongdoing of MSTC Reinhard."  *Id.* at ¶ 1.  During her second phone call with Mr. Wiggins, on August 29, 2016, Ms. Thompson states that she "asked Mr. Wiggins if he was ever contacted by the investigating officer to review interview notes and sign his name to them.  He adamantly said that he was not."  *Id.* at ¶ 4.

In response, Defendants provide the declarations of Lt. Newcomb and Lt. Gretal G. Kinney.  Lt. Newcomb disputes the statements Mr. Wiggins allegedly made to Ms. Thompson.  Lt. Newcomb states that "on March 16, 2015, I conducted a telephonic interview of Mr. Ronnie

Wiggins regarding statements MSTC Reinhard may have made to him." Defs.' Opp'n, Ex. 2 (Declaration of Lieutenant David Newcomb, United States Coast Guard) at ¶ 3. "The phone call lasted approximately 7 minutes." *Id.* "During the phone call," Lt. Newcomb states, "Mr. Wiggins stated that MSTC Reinhard made several comments to him about Coast Guard member, Marine Science Technician Second Class [ ] Brittany McKibben." *Id.* at ¶ 5. Lt. Newcomb states that he "took notes during this phone call," and attaches a copy of his notes. *Id.* at ¶ 4. Lt. Newcomb further states that "[p]rior to concluding my phone conversation with Mr. Wiggins, I reviewed with him all of the notes that I took and confirmed that the notes were complete and accurate." *Id.*

Importantly, Lt. Newcomb offers an explanation for why Mr. Wiggins may be prevaricating with Plaintiff and his representatives about whether he spoke to Lt. Newcomb. He states that he had a second phone conversation with Mr. Wiggins on August 22, 2016, and that "[d]uring this phone conversation, Mr. Wiggins affirmed to [him] what he had previously told me during my investigation about MSTC Reinhard's statements to him concerning MST2 Brittany McKibben," but stated that, due to recent confrontations in which Plaintiff urged him to recant, and with a desire to "stay out of the situation," "he was considering changing his story." *Id.* at ¶¶ 13-14.

Lt. Newcomb's declaration is corroborated in substantial part by an apparently uninterested witness, Lt. Kinney, who avers in a declaration that, having spoken with Mr. Wiggins, Mr. Wiggins "confirmed the underlying misconduct he witnessed by MSTC Reinhard." Defs.' Opp'n, Ex. 1 (Decl. of Lieutenant Gretal G. Kinney, United States Coast Guard) at ¶ 8. Lt. Kinney's declaration also corroborates Lt. Newcomb's testimony regarding a potential reason why Mr. Wiggins told Plaintiff and his representatives that he had never spoken with Lt.

Newcomb.  According to Lt. Kinney, Mr. Wiggins confirmed that "on all occasions that MSTC

Reinhard confronted him about this matter, he denied ever giving a statement to Lt. Newcomb."

*Id.* at ¶ 9.  However, according to Lt. Kinney, Mr. Wiggins stated that he did so because "he was

not comfortable with the situation and did not want to be involved any further and so he had told

MSTC Reinhard he hadn't made any statement."  *Id.*  Lt. Kinney states that "Mr. Wiggins

described a couple of occasions in the months preceding our phone call where MSTC Reinhard

approached him to discuss Mr. Wiggins's involvement in the USCG investigation" and "MSTC

Reinhard had apparently told Mr. Wiggins that he was fired and that he had lost his pension."  *Id.*

at ¶ 10.  According to Lt. Kinney, however, Mr. Wiggins admitted that "he told MST2

McKibben about the [February 16, 2015] comment at that time and then later, when he was

contacted by Lt. Newcomb, he repeated his statement of what MSTC Reinhard had said."  *Id.* at

¶ 8.

    In reply, Plaintiff offered a tape recorded discussion between a private investigator and

Mr. Wiggins that occurred earlier this week, on September 12, 2016.  Mr. Wiggins purportedly

told the private investigator that "[n]obody came and interviewed" him about Reinhard's

statement, but then later stated that "I guess you could say they were interviewed by me because,

uhm, my buddy Chris was in the Coast Guard, and – he called me from the coast guard station

and asked me what he had said and I told him."  Pl.'s Reply, Ex. 1 (Recording of Conversation

Between Ms. Lyndee Moore and Mr. Ronnie Wiggins Held On September 12, 2016).  When

asked whether it was "[j]ust Chris" who called him, Mr. Wiggins acknowledged that "there could

have been somebody else in the room listening."  *Id.*  Mr. Wiggins also confirmed his underlying

account of what he heard Plaintiff say on February 16, 2015.  He told the private investigator that

"all I did was tell a friend of mine one night. He said something derogatory about his wife and I didn't even know who this guy was." *Id.*

The Court will not conduct credibility determinations or otherwise weigh this evidence at this time. It is sufficient to say that there is evidence in the record to support both Plaintiff's and Defendants' descriptions of whether and how Lt. Newcomb interviewed Mr. Wiggins.[6] What is undisputed is that Mr. Wiggins continues to claim that Plaintiff made the initial statement regarding the McKibbens which Plaintiff was found to have falsely denied making and which is the underlying basis of the Article 107 violation. Although Plaintiff disputes Lt. Newcomb's statements regarding *how* the Coast Guard came to acquire Mr. Wiggins' testimony regarding Plaintiff's alleged statement, it appears undisputed that Mr. Wiggins continues to consistently state that Plaintiff did in fact make that statement. While perhaps not dispositive of Plaintiff's claims, this fact would appear to cut against a finding that Plaintiff was wrongfully terminated. In sum, Plaintiff has, at best, demonstrated that the evidence regarding his claims is currently in equipoise. He has certainly not met his burden by a preponderance of the evidence that he is likely to succeed.

---

[6] The only alleged falsehood the Court can discern that is not the subject of competing evidence is Plaintiff's claim that Lt. Newcomb falsely stated that he "took notes in front of Mr. Wiggins." Compl. ¶ 35. However, Plaintiff somewhat overstates Lt. Newcomb's description of his interview. Lt. Newcomb stated in his report that "Exhibits 1-13 and 16 document interview notes taken by me in the presence of the interviewee." CG000089. Exhibit 7 contains Lt. Newcomb's notes from his interview with Mr. Wiggins. Therefore, Plaintiff argues, Lt. Newcomb stated that he "took notes in front of Mr. Wiggins." Compl. ¶ 35. Lt. Newcomb's use of the phrase "in the presence of" may not have been precise in that he referred to a number of interviews, some of which may have been in person and others conducted by telephone, but the Court finds it unlikely that Plaintiff would succeed by parsing Lt. Newcomb's language in this manner. Moreover, this claim is unlikely to succeed because the fact that Lt. Newcomb's investigation of Mr. Wiggins occurred over the telephone was known to the Final Separation Authority when it made its decision to separate Plaintiff. CG000008 (arguing in rebuttal to the Board's Report that "the investigator called a witness named Ronnie Wiggins, via telephone" and that the interview notes were "never reviewed, verified, or swor[n]").

**B. Plaintiff Fails to Show Irreparable Injury**

Plaintiff has also not made a sufficient showing that he will suffer irreparable injury if an injunction is not issued. To show that a preliminary injunction is warranted, Plaintiff must demonstrate that there is a likelihood of irreparable harm. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). The Court of Appeals for the D.C. Circuit "has set a high standard for irreparable injury." *Id.* "First, the injury 'must be both certain and great; it must be actual and not theoretical.'" *Id.* (citation omitted). "Second, the injury must be beyond remediation." *Id.*

Plaintiff argues that he will suffer irreparable injury in the absence of injunctive relief as a result of losing his position as an MSTC. Pl.'s Mot. at 14-15. He argues that the basis for, and circumstances of, his separation will result in a stigma and negatively affect his future employment, ███████████████████████████████████████████████ that a violation of his "right to Due Process is per se irreparable" and that the ability to hold a new Board, should he be successful in his lawsuit, will be "severely hindered as the passing of time will erode witness memories." *Id.* at 15.

The Court finds that Plaintiff has not met his burden of demonstrating that any of these injuries are "certain," "actual," or "beyond remediation." *Chaplaincy*, 454 F.3d at 297. First, the Court has already found that Plaintiff's claim does not raise due process issues, and accordingly finds that the alleged violation of Plaintiff's right to due process does not constitute irreparable injury.

To the extent Plaintiff claims his loss of employment will constitute an irreparable injury, that argument also fails because such an injury is not irreparable. As Defendant argues and

Plaintiff does not dispute, if successful on the merits of his claims Plaintiff could be reinstated in the Coast Guard and receive back pay. *See Sampson v. Murray*, 415 U.S. 61, 91 (1974) (where plaintiff sought preliminary injunction to enjoin discharge, holding that "loss of income . . . falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction"); *Bors v. Allen*, 607 F. Supp. 2d 204, 211 (D.D.C. 2009) (finding no irreparable injury where plaintiff, "if he were to be successful on the merits, would be reinstated and receive back pay").

Plaintiff also fails to demonstrate that he will suffer irreparable injury by arguing that his discharge will create a "stigma," or otherwise "unfairly paint" Plaintiff such that he will be unable to obtain future employment. This claim is speculative and not supported by any facts. Although "reputational injury can be used to establish irreparable harm in certain circumstances. . . . as with all other forms of irreparable harm, the showing of reputational harm must be concrete and corroborated, not merely speculative." *Trudeau v. Federal Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006). The Court will not credit Plaintiff's bald assertions regarding reputational harm and employment consequences without any support. Also too speculative and unfounded is Plaintiff's argument regarding "erod[ing] witness memories." Pl.'s Mot. at 15. Plaintiff does not explain what witness' testimony he is concerned about, nor does he provide any evidence suggesting that any particular witness would not be able to adequately testify in front of a new Administrative Separation Board.[7]

---

[7] Indeed, it seems to the Court that the only relevant witness regarding the disputed Article 107 violation is Mr. Wiggins, who has consistently *confirmed* his account that Plaintiff made the allegedly inappropriate comment about the McKibbens. Pl.'s Reply, Ex. 1 (recording of Mr. Wiggins on September 12, 2016, provided by Plaintiff, stating that "all I did was tell a friend of mine one night. He said something derogatory about his wife . . .").







████████████████████████████ In sum, the Court finds that Plaintiff has not

met his burden of demonstrating that he would suffer any irreparable injuries absent injunctive

relief.

### C. Public Interest and the Balance of Hardships

Finally, the Court finds that Plaintiff has not shown that the public interest or the balance

of hardships weigh in favor of granting injunctive relief. Plaintiff argues that an injunction is in

the public interest because it will "serve the statutory due process requirements which are of

dramatic consequence," and "[i]t is always of interest to National Security and the public that

service members . . . are accorded due process." Pl.'s Mot. at 16. Plaintiff also argues that he

will suffer a hardship if he "is forced to endure a several year process with the likelihood of

prevailing" because it will harm "his potential career progression." *Id.*

The Court acknowledges that Plaintiff will suffer a hardship by being discharged pending

the resolution of this case. However, as the Court has already found, Plaintiff can be made

whole by being reinstated and receiving back pay if he eventually prevails on his claims.

████████████████████████████████████████████

████████████████████████████████████████ The

Court also agrees that it is in the public interest to ensure the process by which service members

are discharged is fair. However, the Court has already determined that Plaintiff is unlikely to



succeed on a claim that he was denied any due process with regard to his separation. As explained above, although couched in terms of procedural error, Plaintiff is actually asking the Court to reassess the credibility of a piece of evidence after the determinations of the Administrative Separation Board and Captain Virkaitis. Moreover, balanced against this procedural interest and Plaintiff's hardship is the public's interest in the proper functioning of the military, which includes its ability to discharge personnel as it deems necessary without unnecessary intrusion. *See Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) (the Judiciary's deference to the Military "is at its highest when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process"). In this instance, the Court finds that neither the public interest nor the balance of hardships favor a preliminary injunction.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's [4] Motion for Preliminary Injunction is DENIED.

Dated: September 16, 2016

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge